McMILLAN, Judge.
The appellant was convicted of theft of property in the second degree, a violation of § 13A-8^1, Code of Alabama 1975. Following a sentencing hearing, he was sentenced, pursuant to the Habitual Felony Offender Act, to 16 years in the state penitentiary. He was further ordered to pay $50 to the crime victims’ compensation fund.
The appellant argues that the trial court erred in holding that he had failed to establish a prima facie case of racial discrimination by the prosecutor in the exercise of his peremptory strikes. The appellant argues that the trial court’s ruling was based solely on comparison of the number of blacks seated on the jury to the number of blacks on the venire.
The following transpired following the striking of the jury:
“[Defense counsel]: I’d like to challenge the strike that [the prosecutor] made of juror number — first strike — and fourth strike.
“THE COURT: What’s the basis for your—
“[Defense counsel]: Of the first four jurors, two of the them are black. And blacks only made up a small percentage of the original pool. And particularly number four didn’t even say anything that I know of except who he was and where he worked.
“THE COURT: Okay. Anything further? “[Defense counsel]: That’s all.
“THE COURT: Okay. Well as I’m analyzing the jury panel and y’all check me on this — it seems to me that a panel of twenty eight, and then we had one challenge granted which took it down to twenty seven. And that left four blacks or minorities on the jury panel. So with the comparison, the number of minorities — Does anybody disagree with that?
“[Defense counsel]: I think that’s correct.
“THE COURT: Okay. The four on there, comparing it to the number on the jury of twelve, that would be really less than two. And with our demographics, we would be, *248 say, between less than two there and then up to about three.
“And as I understand, we have juror number twenty four ... who is black that is on the jury as selected. And we also-have [juror’s name] who is black, number fifty nine, who is on the jury. So I believe that we have two out of twelve.
“So I’m going to have to rule that there’s no prima facie ease made.”
On appeal, the State argues that despite the appellant’s argument that this cause is due to be remanded based on the authority of Ex parte Thomas, 659 So.2d 3 (Ala.1994), there is only an inference from the record that the trial court based its decision on the number of black jurors on the venire as compared to the number of black jurors who actually were selected to sit on the jury, and that the appellant’s counsel has failed to show a pattern of prejudicial striking by the prosecutor.
The reason for the trial court’s holding, reflected in statements made by the court before its ruling, was the fact that 4 blacks were on a 27-member jury venire as compared to 2 jurors on a 12-member jury. The trial court did make an elusive reference to demographics and, therefore, may have considered demographies in arriving at its holding; however, this court has held where a trial court clearly considered this numerical comparison and also stated that it also took into consideration the prosecutor’s history for nondiseriminatory jury striking and his lack of a pattern thereof, and the trial judge’s personal observations during voir dire, that it was necessary to remand the cause because of the trial court’s reliance, even in part, on the percentages. Story v. State, 665 So.2d 961 (Ala.Cr.App.1994). See also McClain v. State, 659 So.2d 161 (Ala.Cr.App.1994) (trial court also considered voir dire questioning and factors set forth in Ex parte Branch, 526 So.2d 609 (Ala.1987).
The State further argues that no pattern of racial striking was shown in that the prosecutor used only two of his seven strikes[1] to remove blacks from the jury, whereas he could have used his strikes to remove all four blacks. However, in cases involving similar statistics, this court has remanded the causes for the trial court to determine whether a prima facie case of discrimination existed, when the trial judge relied on the percentages comparison condemned in Ex parte Thomas, supra. See e.g., McClain v. State, supra (State used 8 of 21 peremptory strikes to remove 8 of 9 blacks from the jury); Long v. State, 668 So.2d 54 (Ala.Cr.App.1994) (State struck 7 of 16 black veniremembers); Bennett v. State, 659 So.2d 174 (Ala.Cr.App.1994) (State used 6 of its 16 peremptory challenges against blacks, leaving 3 black jurors); Eason v. State, 675 So.2d 483 (Ala.Cr.App.1995) (State used 3 of its 7 strikes against 3 of the 8 potential black jurors); McRath v. State, 668 So.2d 874 (Ala.Cr.App.1995) (State struck 3 of its 8 black venire-members); Stargell v. State, 672 So.2d 1359 (Ala.Cr.App.1994) (State used 4 of its 12 peremptory challenges against black venire-members; defense used 2 of its 12 peremptory challenges against black veniremembers; and 3 black jurors remained); Mack, Jr, v. State, [Ms. CR-92-1904, Jan. 13, 1995] — So.2d-(Ala.Cr.App.1995) (State struck 2 black veniremembers; defense struck 3 black veniremembers; 46% of jury was black). Although the cases that involved scenarios where the State used only some of its peremptory challenges against some of the black veniremembers were remanded, these percentages are a factor to be considered by the trial court in determining whether a prima facie case of discrimination existed on remand.
In Long v. State, supra, this court remanded the cause because the trial court, basing its decision on the percentages comparison condemned in Ex parte Thomas, supra, found no prima facie case of discrimination. This Court quoted the Alabama Supreme Court’s language in Ex parte Thomas, supra, as follows:
“‘A skilled but racially biased attorney could learn to manipulate the strike process so as to be able to strike a few blacks from the venire on the basis of race, and yet not be called to account for the racially based strikes, as long as some blacks were left on the jury. Such a result should not be approved.
*249 “ ‘ “ ‘[A] prima facie case may be made where relevant circumstances indicate an inference of purposeful race discrimination no matter that one or more black persons may remain on the jury.’ United States v. Wilson, 884 F.2d 1121, 1123 (8th Cir.1989). ‘The striking of one ven-ireperson for a racial reason violates the Equal Protection Clause, even when valid reasons for striking some black jurors are shown.’ Williams v. State, 548 So.2d 501, 507 (Ala.Crim.App.1988), cert. denied, 489 U.S. 1028 [109 S.Ct. 1159, 103 L.Ed.2d 218] ... (1989). ‘Of course, the fact that blacks are ultimately seated on the jury does not necessarily bar a finding of discrimination under Batson, see [United States v.] Battle, 836 F.2d [1084] [at] 1086 [ (8th Cir.1987) ], but the fact may be taken into account in a review of all the circumstances as one that suggest that the government did not seek to rid the jury of persons who shared the defendant’s race.’ United States v. Young-Bey, 893 F.2d 178, 180 (8th Cir.1990).”
“ ‘Mitchell v. State, 579 So.2d 45, 48 (Ala.Crim.App.1991), cert. denied 596 So.2d 954 (Ala.1992)....”’
659 So.2d at 7.
Because of the trial court’s statements in determining that no prima facie showing of racial discrimination had been made, and in light of the Alabama Supreme Court’s holding in Ex parte Thomas, supra, this cause is due to be remanded to the trial court in order for an evidentiary hearing to be held to determine whether the appellant established a prima facie case of racial discrimination by the prosecutor in the exercise of his peremptory strikes against black jurors. The trial court is directed to file a return with this court in 45 days, including the evidence presented, as well as written findings of fact and conclusions of law.
REMANDED WITH INSTRUCTIONS.
All Judges concur except LONG, J., recuses.

. The record does not clearly state the number of strikes available to each side; however, because there were 27 members of the jury venire, apparently each side had at least seven strikes.