The appellant, Eric Dewayne Raspberry, was convicted of manslaughter, a violation of § 13A-6-3, Code of Alabama 1975. He was sentenced to 20 years in prison.
The evidence tended to show that the appellant shot and killed Jeffery Cole with a shotgun outside Mary and Shed's Lounge in Bessemer, Alabama, on August 24, 1990.
 I
The appellant argues that the court erred in denying his motion based on Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Batson, the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89, 106 S.Ct. at 1719.
After considering the appellant's Batson motion, the court found that the appellant had failed to present a prima facie case of discrimination. Only when a party making the Batson
motion presents a prima facie case of discrimination must the other side give race-neutral reasons for its strikes. Kelley v.State, 602 So.2d 473, 476 (Ala.Cr.App. 1992). Here, the appellant failed to present a prima facie case; therefore, the court did not require the prosecution to give reasons for its strikes.
There were 27 veniremembers, 10 of whom were black. The struck jury, composed of 13 members, contained 5 blacks. Thus, 37% of the venire was black and 38.5% of the jury was black. Where the black/white ratio of the venire and the jury is the same, there can be no prima facie showing of discrimination.United States v. Forbes, 816 F.2d 1006 (5th Cir. 1987).Carrington v. State, 608 So.2d 447 (Ala.Cr.App. 1992). *Page 658 
The circuit court correctly denied the appellant'sBatson motion because the appellant failed to present a prima facie case of discrimination.
 II
The appellant next argues that the circuit court erred in receiving certain testimony of Dr. Gary T. Simmons, Jefferson County Coroner, into evidence. The appellant objected to the following testimony of Dr. Simmons, describing a photograph of the victim:
 "State's Exhibit 28 was taken to show both the wounds to the chest and also to the left hand and it was taken — the purpose of this picture was so that you could get some idea of how one pattern, one shot, could have caused both of these injuries. It is not a perfect picture because the body after death becomes what we call rigorous or stiff.
 "But you can see the hand is moved up using myself as an example approximately right here. And you can see how that this would all be part of one pattern if the hand is in this position."
The appellant contends that this testimony should not have been received into evidence because, he argues, it invaded the province of the jury by describing the "relative positions of the combatants when the fatal shot was fired." Ivey v. State,369 So.2d 1276, 1280 (Ala.Cr.App.), writ denied, 369 So.2d 1281
(Ala. 1979). However, this court in Ivey, went on to state:
 "[A] properly qualified expert may testify to the 'path of flight' or trajectory of the bullet, Wilbanks v. State, 42 Ala. App. 39, 151 So.2d 741, cert. denied, 275 Ala. 701, 151 So.2d 744 (1963). He may testify to the slant or angle of the gunshot wound and describe its character. Woods v. State, 54 Ala. App. 591, 310 So.2d 891 (1975); Mathis v. State, [15 Ala. App. 245, 73 So. 122 (1916)]. An expert may testify about the direction from which the bullet was fired or the blow was struck, Blackmon v. State, 246 Ala. 675, 680, 22 So.2d 29
(1945), Richardson v. State, 37 Ala. App. 194, 65 So.2d 715 (1953), and may state the distance between the deceased and the barrel of the weapon at the time the fatal shot was fired. Straughn v. State, 270 Ala. 229, 121 So.2d 883 (1960)."
Ivey, 369 So.2d at 1280.
Dr. Simmons's testimony did not concern the position of the victim in relation to the position of the assailant. He merely explained how the victim's wounds were caused by the shotgun blast. When Dr. Simmons referred to the position of the victim's hand, it was to describe how the victim's hand wound occurred. See, McLaughlin v. State, 586 So.2d 267
(Ala.Cr.App. 1991). This testimony did not convey to the jury any information concerning the relative positions of the victim and the appellant. The court did not err in receiving this testimony into evidence.
 III
The appellant argues that the circuit court erred in refusing to give all of its requested charges to the jury. Of the 25 charges that the appellant requested, the court gave 6. The appellant contends that the court committed reversible error in not giving all of his charges; however, the appellant objected only to the failure to give 5 charges. After the appellant's objection, the court gave the jury instructions that substantially covered 3 of these requested charges.
The only specific charges that were not given that the appellant mentions in his brief were those concerning criminally negligent homicide. The appellant's requested instruction number 10 defined "criminally negligent homicide" and requested instruction number 15 defined "criminal negligence." The appellant contends that the court erred in not charging the jury on the lesser included offense of criminally negligent homicide.
 "An accused is entitled to a charge on lesser included offenses if there is any reasonable theory to support the theory and the position. Weldon v. State, 50 Ala. App. 477, 280 So.2d 183, cert. denied, 291 Ala. 801, 280 So.2d 186 (1973). However, a charge on a lesser included offense shall not be given 'unless there is a rational basis for a verdict convicting the defendant of the included offense.' Ala. Code § 13A-1-9(b) (1975)."
Hill v. State, 485 So.2d 808, 809 (Ala.Cr.App. 1986). *Page 659 
The appellant contends that the instructions dealing with criminal negligence should have been given because he "did not realize that the pellets from the shotgun blast would spread out so quickly." He does not deny, however, that he intentionally shot the victim. "In Robinson v. State,441 So.2d 1045 (Ala.Cr.App. 1983), this court held that the intentional drawing of a gun was at least a reckless act and was not merely criminally negligent." Surles v. State, 610 So.2d 1254, 1256
(Ala.Cr.App. 1992). Here, where the appellant intentionally shot the victim, there is no rational basis for instructing the jury on the offense of criminally negligent homicide.
For the above stated reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.